UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-62067-CIV-COHN/SELTZER

CONNECTING WAVES WATER
TAXI SERVICES, N.A.,

    Plaintiff,

vs.

JEDISON POWER CATAMARANS, INC.,

    Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DIRECTING PARTIES TO SHOW CAUSE WHY SUMMARY JUDGMENT SHOULD NOT BE ENTERED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(f)**

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Summary Judgment [DE 24] ("Motion"), Defendant's Response [DE 28], and Plaintiff's Reply [DE 29]. The Court has considered these papers and the record in this case, and is otherwise advised in the premises. For the reasons set forth below, the Court will **GRANT in part and DENY in part** Plaintiff's Motion. The Court will further order the parties to **SHOW CAUSE** why summary judgment should not be entered on grounds other than those raised in the Motion, pursuant to Federal Rule of Civil Procedure 56(f).

    I.    **Standard**

        A.    **Summary Judgment**

The Court will grant summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56. The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

After the movant has met its burden under Rule 56, the burden of production shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party may not rely merely on allegations or denials in its own pleading, but instead must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56; Matsushita, 475 U.S. at 587.

As long as the non-moving party has had ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249–50.

    **B.**    **Applicability of Florida Law**

This case is before the Court on diversity grounds. See 28 U.S.C. § 1332. It is an action for breach of contract and related claims under Florida law. In applying substantive law, this Court is therefore bound by decisions of the Florida Supreme

Court.  See Shapiro v. Associated Int'l Ins. Co., 899 F.2d 1116, 1118 (11th Cir. 1990).  If the Florida Supreme Court has not spoken on an issue, Florida District Court of Appeals decisions control absent persuasive indication that the Florida Supreme Court would rule otherwise.  See Blanchard v. State Farm Mut. Auto. Ins. Co., 903 F.2d 1398, 1399 (11th Cir. 1990).

**II.     Background**

The parties agree on many of the facts pertinent to this suit.  In or around June 2013, Plaintiff Connecting Waves Water Taxi Services, N.A. ("Connecting Waves") purchased a catamaran from Defendant Jedison Power Catamarans, Inc. ("Jedison"). [DE 24 at 1; DE 28-1 at 1.]  Connecting Waves intended to use the catamaran in St. Maarten, to ferry passengers from a cruise ship dock to downtown, and Defendant was so advised.  [DE 24 at 2; DE 28 at 2.]  Jedison built the vessel and Connecting Waves paid for it.  Connecting Waves' agents took possession in Fort Lauderdale and piloted the vessel to St. Maarten.  [DE 24-3 at 15–16.]

Upon the vessel's arrival in St. Maarten the deal began to go bad.  According to Connecting Waves, the Section Head of the Maritime Affairs Department in St. Maarten, Claudius Carty, surveyed the vessel.  [DE 24 a 2.]  Mr. Carty issued a report on January 27, 2014, detailing numerous problems with the vessel.  He concluded that these problems "are considered to be very unacceptable for a new built passenger carrying vessel, and therefore [the vessel] can't be registered in the passenger vessel registry until all of the above-mentioned are rectified."  [DE 24-4 at 7.]

Importantly for the purposes of this Order, the parties appear to disagree over whether Mr. Carty is an agent of St. Maarten's government or hired by Connecting Waves.  Neither party supplies competent evidence on the point.  Connecting Waves

3

includes Mr. Carty's report [DE 24-4], in which Mr. Carty identifies himself as "Section Head of the Maritime Affairs, St. Maarten, Dutch Caribbean." [Id. at 8.] But Connecting Waves attaches no affidavit or other sworn statement attesting to the report's authenticity or to Mr. Carty's role.  Jedison's Response characterizes Mr. Carty as "their surveyor," referring to Connecting Waves. [DE 28 at 2.] Further, Jedison Knowles—the principal and owner of Defendant Jedison—testified at deposition that Mr. Carty was Connecting Waves' surveyor. [DE 24-3 at 21.]  But he does not provide the basis for his belief and it does not appear to be based upon his first-hand knowledge. [Id.] For the purposes of the instant Motion, the Court will resolve this dispute in Jedison's favor as the nonmoving party. See Anderson, 477 U.S. at 255 (holding that on a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.")  The Court will assume that Plaintiff hired Mr. Carty to perform the survey.

Either way, Connecting Waves demanded Jedison fix the issues.  Through its attorneys, Connecting Waves gave Jedison two options: either (1) repair the vessel without further payment or (2) provide Connecting Waves with the funds to do so on its own. [DE 24-6 at 8.]  Jedison disputed its liability for the repairs. [DE 24-5 at 2–4.]  It argued that many of the issues that Mr. Carty identified either were not required for registration or were not the builder's responsibility under the building contract. [Id.] Jedison further argued that any structural damage that the vessel sustained occurred when Connecting Waves piloted it to St. Maarten from Fort Lauderdale, a voyage the vessel was expressly not designed to make. [Id.]

4

The parties eventually settled their dispute.  On March 14, 2014, the parties entered into a written agreement "for the purpose of making a full and final compromise, adjustment and settlement of any and all claims for the express purpose of precluding forever any further or additional suits arising out of the aforesaid occurrences whether the damages are known or unknown at this time." [DE 24-7 at 2–3.]  This Settlement Agreement also states that "no promise, inducement or agreement not herein expressed has been made to the undersigned." [Id. at 3.]  Under this settlement, Jedison agreed to take back the vessel and refund its purchase price. [Id. at 3.] Jedison would pay Connecting Waves $532,684.00 within four months after return of the vessel. [Id. at 2.]  Connecting Waves subsequently agreed to reduce this amount by $49,061.07 for items that it retained from the vessel, and the parties agreed that Jedison would make payment by August 6, 2014.  [DE 24-8 at 2.]

August 6, 2014, came and went, but Jedison did not pay.  [DE 24-3 at 22.] According to Knowles's deposition testimony, Jedison anticipated that it would be able to sell the vessel in the four months following its return.  [Id.]  But in fact the boat did not sell. [Id.]  However, Jedison performed some light repairs on the vessel [Id. at 23] and was able to lease it to a Bahamas company for use as a passenger ferry. [Id. at 24.] As part of this process, "the local Bahamian surveyor for the port," Cyril Morley inspected the vessel and cleared it for operation as a passenger ferry. [Id.]  Jedison contends that the applicable passenger ferry standards in St. Maarten and the Bahamas are identical.  Jedison also attaches an affidavit from Mr. Morley attesting that he is familiar with the standards for passenger ferries in St. Maarten and that the vessel

"complies with the requirements for registration as a passenger ferry" there. [DE 28-2 at 1–2.]

Connecting Waves sues Jedison under two theories.  First, Connecting Waves sues Jedison for Breach of Contract for failing to make the August 6, 2014, payment required by the Settlement Agreement.  [DE 1 at 3.]  Second, Connecting Waves sues Jedison for Fraudulent Inducement, alleging that Jedison never intended to honor the Settlement Agreement.  [Id. at 3–4.]  Jedison argues that the Settlement Agreement should be rescinded because Connecting Waves wrongfully induced it into making the agreement "based upon the fraudulent misrepresentation from the Counter Defendant Connecting Waves that the vessel could not be registered or certified in St. Martin [sic] as a commercial passenger vessel."  [DE 20 at 4.]  Jedison also counterclaims for Fraudulent Inducement on this ground, and on the alternative ground that Connecting Waves "misrepresented and/or concealed the condition of the vessel," upon returning it. [Id. at 3.]  Connecting Waves moves for Summary Judgment in its favor on its Breach of Contract claim, and upon Jedison's claims of Fraudulent Inducement.

### III.     Discussion

#### A.     The Instant Motion

Although neither party employs the term in their pleadings or motion papers, this suit is one for breach of a settlement agreement.  "Any consideration of [a] settlement agreement must commence with the recitation of two basic rules of analysis."  Reed v. United States, 717 F. Supp. 1511, 1515 (S.D. Fla. 1988).  First, "compromises of disputed claims are favored by the courts."  Id.  Second, "[w]here the parties acting in good faith, settle a controversy, the courts will enforce the compromise without regard to what result might, or would have been, had the parties chosen to litigate rather than

settle." Id. (internal quotation marks omitted).  Further, under Florida law, "settlements are highly favored and will be enforced whenever possible."  Robbie v. City of Miami, 469 So. 2d 1384, 1385 (Fla. 1985).

There is no dispute that Jedison breached the Settlement Agreement's terms.  It took the vessel, but did not pay.  Instead, Jedison attacks the Settlement Agreement's validity, alleging Fraudulent Inducement by Connecting Waves.  Under Florida law, the elements of Fraudulent Inducement are as follows: (1) "[a] misrepresentation of a material fact;" (2) "[t]hat the representor knew or should have known of the statement's falsity;" (3) "[t]hat the representor intended that the representation would induce another to rely on it;" and (4) "[t]hat the plaintiff suffered injury in justifiable reliance on the representation."  Output, Inc. v. Danka Bus. Sys., Inc., 991 So. 2d 941, 944 (Fla. Dist. Ct. App. 2008).

In its Motion for Summary Judgment, Connecting Waves argues that Jedison has produced no evidence that Connecting Waves made any misrepresentation at all.  [DE 24 at 7–9.]  Connecting Waves contends that (1) the vessel in fact could not be registered in St. Maarten and (2) it never concealed any damage to the vessel.  [Id.]

The Court will address Connecting Waves' second argument first, as it is the easier to dispense with.  The Court will enter summary judgment in Connecting Waves' favor on this issue.  Connecting Waves points out in its Motion that Jedison has produced no evidence to support its contention that Connecting Waves concealed damage to the vessel.  Jedison's Response does not address this deficiency.  Jedison has therefore failed to carry its burden to come forward with specific facts showing a genuine issue for trial.  See Matsushita, 475 U.S. at 587.  The Court's own review of

7

Knowles's deposition testimony also reveals that the only additional damage Jedison discovered following the return of the vessel "were tire marks on the side [of the vessel] and cuts and scratches on the vinyl and under the vinyl." [DE 24-3 at 25.] Knowles acknowledged that this damage was merely cosmetic and that the damage was readily discovered by workers removing stenciling from the vessel's hull. [Id.] Therefore, "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party" on the issue of whether Connecting Waves concealed damage to the vessel. See Matsushita, 475 U.S. at 587.

Jedison's argument concerning Connecting Waves' ability to register the vessel in St. Maarten is more complicated.  As discussed above, there appears to be a factual dispute over whether Mr. Carty was a St. Maarten official with the authority to disallow the vessel's registration, or a surveyor hired by Connecting Waves.  If the former, Connecting Waves must prevail because it would not have made a misrepresentation concerning its ability to register the vessel.  If the latter, it is possible that Connecting Waves erred in concluding that the vessel could not be registered.  At this stage, the Court must resolve this controversy in Jedison's favor.  And Mr. Morley's affidavit, attesting that the vessel could properly be registered in St. Maarten, creates a genuine issue as to whether Connecting Waves in fact erred.  [DE 28-2.]  Accordingly, Connecting Waves' Motion for Summary Judgment will be denied on the issue of whether Connecting Waves misrepresented its ability to register the vessel in connection with the Settlement Agreement.

### B.      Federal Rule of Civil Procedure 56(f)

That said, another ground for summary judgment is readily apparent.  Under Federal Rule of Civil Procedure 56(f), the Court may enter summary judgment on a ground not raised in the parties' motion papers.  However, the Court must first afford the negatively impacted party notice and a reasonable opportunity to respond.

To prevail upon a theory of Fraudulent Inducement, the theory's proponent must show that the alleged tortfeasor "knew or should have known of the statement's falsity." Output, Inc., 991 So. 2d at 944.  Even adopting Jedison's view that Mr. Carty was merely a surveyor employed by Connecting Waves and that he and Connecting Waves were wrong about the vessel's eligibility for registration, Jedison has adduced no evidence tending to show that Connecting Waves knew or should have known that Mr. Carty's assessment was incorrect.  The Court will therefore allow Jedison an opportunity to demonstrate that sufficient evidence exists on this issue to allow its claims to proceed to a jury.  If no such showing is made, the Court will enter summary judgment in Connecting Waves' favor on Jedison's Fraudulent Inducement and Rescission claims, and on Connecting Waves' claim for Breach of Contract.

Finally, the Court notes that no evidence appears in the record to support Connecting Waves' claim for Fraudulent Inducement based upon Jedison's alleged intention never to live up to the Settlement Agreement's terms [see DE 1 at 3–4]. Instead, Knowles's unchallenged deposition testimony reveals that Jedison believed it would be able to sell the vessel in short order and intended to pay Connecting Waves from these proceeds.  [DE 24-3 at 21–22.]  Connecting Waves does not reference its Fraudulent Inducement claim in the instant Summary Judgment Motion.  The Court will

accordingly also order Connecting Waves to show cause why summary judgment should not be entered against it on its Fraudulent Inducement claim.

Accordingly, it is **ORDERED AND AJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment [DE 24] is **GRANTED in part and DENIED in part** consistent with the foregoing.

2. On or before **April 29, 2015**, Jedison shall **SHOW CAUSE** in writing why summary judgment should not be entered against it on its claims for Rescission and Fraudulent Inducement, and in Connecting Waves' favor on its Breach of Contract claim, for the reasons identified in this Order. Jedison may submit additional supporting evidence with this response.

3. Also on or before **April 29, 2015**, Connecting Waves shall **SHOW CAUSE** in writing why summary judgment should not be entered against it on its claim for Fraudulent Inducement for the reasons identified in this Order. Connecting Waves may likewise submit additional supporting evidence with its response.

4. Failure to show cause in response to this Order will result in the entry of summary judgment on the relevant claims.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 22nd day of April, 2015.

*/s/ James I. Cohn*
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.